UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GERALD JORDAN,                              *

        Plaintiff                          *

        v.                                  *       Civil Case No. 8:22-cv-02680-AAQ

TOWN OF FAIRMOUNT HEIGHTS,                  *
*et al.*,
                                            *
        Defendants
                                            *

## MEMORANDUM OPINION AND ORDER

This is a case arising out of an incident in which Plaintiff Gerald Jordan alleges that two police officers employed by the Town of Fairmount Heights improperly pursued his vehicle, arrested him with excessive force, and left him at the Prince George's County Detention Center without charging him. Mr. Jordan has alleged federal and state law claims against the two officers who engaged in this conduct and against Stephen Watkins, the former Chief Police of the Fairmount Heights Police Department. Pending before the Court is Defendant Watkins' Motion to Strike the Expert Report and Preclude the Testimony of Plaintiff's Expert Witness Gregory Gilbertson. ECF No. 41. The Motion has been fully briefed, and I conclude that a hearing is not necessary under this Court's Local Rules. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, Defendant Watkins' Motion to Strike is granted, in part, and denied, in part.

## BACKGROUND

The following facts are set forth in Plaintiff's Complaint, ECF No. 2. Plaintiff Gerald Jordan alleges that on or about August 28, 2019, he was legally sitting in his car in Northeast Washington, D.C. ECF No. 2, at ¶ 13. Two police officers for the Town of Fairmount Heights, Officers Martique Vanderpool and Philip James Dupree, pulled behind Mr. Jordan in an unmarked

1

vehicle. *Id.* at ¶¶ 14, 16. When Mr. Jordan began driving away, the officers began following him without activating their emergency equipment or otherwise identifying themselves as police officials. *Id.* at ¶¶ 17–21. During the chase, the officers' car struck Mr. Jordan's car, forcing it off the road. *Id.* at ¶ 22. After Mr. Jordan exited his vehicle, Defendants Vanderpool and Dupree chased Mr. Jordan and began beating him before finally identifying themselves as police officers. *Id.* at ¶ 24. Mr. Jordan alleges that, using excessive and unnecessary force, Defendants Vanderpool and Dupree handcuffed and arrested Mr. Jordan without probable cause. *Id.* at ¶¶ 25–26. Mr. Jordan alleges that the officers injured his lower back and wrist during the encounter and did not provide medical attention to Mr. Jordan despite his complaints of pain. *Id.* at ¶¶ 26, 28–29. Defendants Vanderpool and Dupree then drove Mr. Jordan to the Prince George's County Detention Center, where they allegedly dropped him off and left him without charge. *Id.* at ¶ 30. Later, Defendant Dupree cited Mr. Jordan for a variety of traffic-related offenses. *Id.* at ¶ 31.

In August 2022, Mr. Jordan filed suit in Prince George's County, naming as defendants Officer Vanderpool, Officer Dupree, and Stephen Watkins, the former Police Chief of Fairmount Heights. ECF No. 2. On October 18, 2022, Defendants removed the case to this Court. *See* ECF No. 1. Mr. Jordan's Complaint alleges multiple state tort claims, as well as claims under the Maryland Declaration of Rights and the United States Constitution. *See* ECF No. 2. Among these, Mr. Jordan asserts against Defendant Watkins a negligent hiring and retention claim as well as a claim under 42 U.S.C. § 1983 for the deprivation of Mr. Jordan's constitutional rights based on Defendant Watkins' supervision of Defendant Vanderpool and Defendant Dupree. *Id.* at ¶¶ 56–58, 68–74. Specifically, Mr. Jordan alleges that Defendant Watkins failed to reasonably investigate the backgrounds of Defendants Vanderpool and Dupree when he hired them and failed

to adequately supervise the officers during their employment, ultimately causing Mr. Jordan's injuries. *Id.*

During discovery, Mr. Jordan designated Gregory G. Gilbertson, a former professor at Centralia College, as a proposed expert witness on matters of police procedure. ECF No. 42-1, at 1; *see also* ECF No. 41-2, at 7 (testifying regarding Professor Gilbertson's experience). Specifically, Mr. Jordan has retained Professor Gilbertson to opine on: 1) whether Defendant Watkins breached the standard of care by hiring Defendant Dupree despite his history of excessive use of force prior to his employment with the Town of Fairmount Heights; and 2) whether Defendant Watkins breached the standard of care in supervising and retaining Defendants Dupree and Vanderpool.

Professor Gilbertson is a retired Professor of Criminal Justice. ECF No. 41-3, at 4. Professor Gilbertson began his career as a police officer from approximately 1988 through 1996, then held positions in court and school security from 1996 through 1999. *Id.* He additionally worked as an International Police Trainer and Curriculum Specialist at the Police College in Baghdad, Iraq. *Id.* He lectured and taught classes on criminal justice from approximately 1997 through 2022 and has also worked as a private investigator and an expert witness on matters of police practices from 2002 to the present. *Id.* Professor Gilbertson has previously testified as an expert on police practices and the use of force. ECF No. 41-2, at 5.

On September 25, 2023, Plaintiff provided Defendant Watkins with: 1) an expert witness designation identifying Professor Gilbertson; and 2) Professor Gilbertson's first report. ECF No. 41-1, at 1. Professor Gilbertson's report was based on his review of preliminary discovery materials, which included facts about Defendant Dupree's employment history and history of excessive use of force complaints. ECF No. 41-3, at 2–3, 6. Professor Gilbertson's report

3

describes Defendant Dupree's history of complaints and employment terminations and concludes that Defendant Watkins acted recklessly in employing him. *Id.* at 6–7. On November 1, 2023, Defendant Watkins' counsel deposed Professor Gilbertson. ECF No. 41-2, at 2. On November 15, 2023, Plaintiff provided a "Supplementation of Disclosures and Responses" to Defendant Watkins, which included an updated version of Professor Gilbertson's report considering new and previously reviewed materials. ECF No. 41-1, at 1. Specifically, Professor Gilbertson's supplemental report considers: 1) a complaint filed in another case in this Court against Defendants Vanderpool and Dupree, Defendant Watkins, and the Town of Fairmount Heights – the *Jane Doe* complaint; and 2) an August 4, 2019 U.S. Department of Justice press release stating that Defendant Dupree had pepper sprayed an individual in custody. ECF No. 41-4, at 3–4. Based on the facts alleged in the *Jane Doe* complaint and the press release, Professor Gilbertson's supplemental report opines that Defendant Watkins failed to exercise reasonable care in supervising, training, disciplining, and retaining Defendants Dupree and Vanderpool. *Id.* at 4–5.

On November 21, 2023, Defendant Watkins filed this Motion to Strike Professor Gilbertson's reports and preclude him from testifying at trial. ECF No. 41. The Motion has since been fully briefed. ECF Nos. 42 and 43.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) [their] . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

4

Fed. R. Evid. 702.  Rule 702 imposes on district courts the responsibility to act as gatekeepers of expert evidence, "ensur[ing] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (emphasis omitted) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).  Nonetheless, "Rule 702 was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).  District courts "'need not determine that the proffered expert testimony is irrefutable or certainly correct' because '[a]s with all other admissible evidence, expert testimony is subject to testing by [v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 Fed. App'x 612, 618 (4th Cir. 2011) (alterations in original) (quoting *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006)).  "[T]he rejection of expert testimony is the exception rather than the rule."  *United States v. Parks*, 849 Fed. App'x 400, 403 (4th Cir. 2021) (quoting *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019)).

**ANALYSIS**

Defendant Watkins makes four arguments in support of his Motion to Strike Professor Gilbertson's report and preclude him from testifying at trial.  First, Defendant Watkins argues that Professor Gilbertson is not qualified to give expert opinions in this case.  ECF No. 41-1, at 1–2.  Second, Defendant Watkins argues that Professor Gilbertson's opinions are inadmissible because they offer only legal conclusions.  *Id.* at 2.  Third, Defendant Watkins argues that Professor Gilbertson's opinions have insufficient factual bases.  *Id.*  Finally, Defendant Watkins argues that Professor Gilbertson's supplemental report was untimely.  *Id.*  The Court addresses Defendant Watkins' arguments in turn.

5

I.     **Professor Gilbertson's Qualifications**

Defendant Watkins argues that the Court should exclude Professor Gilbertson's reports and preclude Professor Gilbertson from testifying at trial because Professor Gilbertson is unqualified to provide an expert opinion in this case. *Id.* at 6. The testimony of an unqualified witness is inadmissible. *See* Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion"). In the Fourth Circuit, a "witness'[s] qualifications to render an expert opinion are . . . liberally judged by Rule 702." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). As Rule 702 sets out, a witness's qualifications can be based on experience, knowledge, skill, training, or education, but "an expert 'may not offer an opinion where the subject matter goes beyond [their] area of expertise.'" *J.F. v. Correct Care Sols., LLC*, No. GJH-16-2177, 2019 WL 1057401, at *5 (D. Md. Mar. 6, 2019) (quoting *Young v. Swiney*, 23 F. Supp. 3d 596, 611 (D. Md. 2014)). Nonetheless, "the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact . . . ." *Smith v. Cent. Admixture Pharmacy Servs., Inc.*, No. AW-07-3196, 2010 WL 1137507, at *2 (D. Md. Mar. 19, 2010) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392–393 (D. Md. 2001)).

Defendant Watkins argues that Professor Gilbertson is unqualified to render opinions on the hiring or supervision of police officers because "he has never recruited, hired, screened, or supervised police officers," has not written or taught on these subjects, and is not a designated expert on these topics. ECF No. 41-1, at 6. While Professor Gilbertson may not have personal experience with the hiring, screening, or supervision of police officers, he may nonetheless be qualified under Rule 702 to opine on these matters by his knowledge, skill, training, or education. Professor Gilbertson has been certified as an expert in police practices and procedures and use of force, and he has taught classes in criminal justice for over twenty years. ECF No. 41-2, at 5.

6

Professor Gilbertson's expertise on the use of force would be helpful to a trier of fact in this case in understanding the seriousness of Defendant Dupree's prior incidents, specifically how those prior incidents should have informed Defendant Watkins when screening Defendant Dupree. It would further be helpful in understanding the seriousness of Defendants Dupree and Vanderpool's use of force during their employment with the Town of Fairmount Heights when assessing whether it was reasonable for Defendant Watkins to retain the officers. Although Professor Gilbertson's background may not be an exact fit with the precise issues of hiring and retention, his expertise is nonetheless relevant and helpful. *See, e.g.*, *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 588–89 (D. Md. 2022) (admitting expert testimony where the expert's background was not an exact fit but was "close enough to possibly be helpful to the jury"). The trier of fact may consider the limitations in Professor Gilbertson's experience when assessing how much weight to give his testimony. Given the liberal standard under which courts are to assess the qualifications of a witness, the Court cannot conclude that Professor Gilbertson lacks the qualifications to opine on the matters identified above.

## II.     Professor Gilbertson's Legal Conclusions

Defendant Watkins next argues that the Court should exclude Professor Gilbertson's proposed expert testimony because his report inadmissibly offers legal conclusions. ECF No. 41-1, at 7–8. "[E]xpert testimony as to legal conclusions is generally inadmissible." *Peters v. Balt. City Bd. of Sch. Comm'rs*, No. WMN-13-3114, 2014 WL 4187307, at *7 (D. Md. Aug. 21, 2014) (citing *Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011); *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). While Fed. R. Evid. 704(a) permits experts to "testify as to the ultimate matter at issue, this refers to testimony on ultimate facts; testimony on ultimate questions of law . . . is not favored." *Sun Yung Lee*, 453 F. App'x at 278 (quoting *Anderson v.*

*Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (internal citations omitted)).  To determine whether an expert's "opinion proffers an improper legal conclusion, the Court must consider whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *Peters*, 2014 WL 4187307, at *7 (quoting *McIver*, 470 F.3d at 562).  Expert testimony and reports that employ "the use of terms with considerable legal baggage" such as 'negligent,' or 'reckless' "nearly always invades the province of the jury." *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006).

Professor Gilbertson's reports impermissibly offer legal standards and conclusions.  Professor Gilbertson's first report presents his opinion that "Chief Watkins failed in a remarkable manner to employ any objectively reasonable standard of care . . . when he . . . chose to hire Phillip Dupree as a police officer."  ECF No. 41-3, at 7.  The report further provides definitions for recklessness and negligence and maintains that Defendant Watkins acted with recklessness in hiring Defendant Dupree.  *Id.*  Similarly, in Professor Gilbertson's supplemental report, he concludes that Defendant Watkins "did not provide an objectively reasonable standard of care . . . when he . . . retain[ed] Martique Vanderpool after receiving multiple complaints of police misconduct about him."  ECF No. 41-4, at 4.  Professor Gilbertson's proposed testimony regarding the applicable legal standards and legal conclusions is inadmissible.  *See McIver*, 470 F.3d at 561–62 ("opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible").  It is the Court's role to instruct the jury on the law, and it is the jury's role to apply the legal standard to the facts of the case.  *See, e.g.*, *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("when a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge").

Nonetheless, "the inadmissibility of the expert's ultimate opinion does not necessarily banish him from the stand altogether, because his specialized knowledge may still assist the trier of fact in other ways." *Kopf*, 993 F.2d at 378. Professor Gilbertson has specialized knowledge that may assist a jury in reaching its own conclusion about whether Defendant Watkins breached the applicable standard of care. As described above, Professor Gilbertson's expertise in the use of force and police practices will be helpful to a jury in understanding the significance of the use of force complaints in the officers' backgrounds, giving it context when evaluating Defendant Watkins' hiring and retention of the officers. Accordingly, the Court will preclude Professor Gilbertson from testifying about the negligence and recklessness standards of care and preclude him from opining on whether Chief Watkins breached the applicable standard of care, but will not preclude Professor Gilbertson from testifying about the applicable standards of conduct for officers, the gravity of the use of force allegations made against the officers, and what actions would have been appropriate when dealing with officers who were accused of serious violations. *See* ECF No. 41-4 at 4 (discussing the International Association of Chiefs of Police Law Enforcement Policy Center's standards of conduct for officers, which includes strategies and techniques for enforcing codes of conduct); *id.* (providing opinion that Defendant Dupree should have been suspended in light of the seriousness of the allegations against him). *See also e.g.*, *Weigle v. Pifer*, No. 2:14-cv-15087, 2015 WL 1980737, at *6 (S.D. W.Va. Apr. 30, 2015) (precluding an expert witness from testifying about certain matters that were "mere legal conclusions" but permitting his testimony on limited matters).

### III.    The Factual Basis for Professor Gilbertson's Testimony

Defendant Watkins also argues that the Court should preclude Professor Gilbertson from testifying because the opinions in his reports lack sufficient factual bases. ECF No. 41-1, at 8–9.

Professor Gilbertson's first report provides a list of discovery materials that he reviewed in forming his opinions. ECF No. 41-3, at 2–3. During Professor Gilbertson's deposition, however, he testified that much of his knowledge about the complaints against Defendant Dupree and Defendant Dupree's prior terminations was based on internet searches and publicly available news articles. ECF No. 41-2, at 9–11. Professor Gilbertson's supplemental report is primarily based on the *Jane Doe* complaint, a complaint filed in this Court against the same defendants, but also references some discovery materials Professor Gilbertson considered while writing the first report. ECF No. 41-4. His supplemental report also references a letter that Defendant Dupree sent to the Mayor and Town Council of Fairmount Heights detailing the inadequacies of Defendant Watkins' supervision of police officers. ECF No. 41-4, at 3–4. The letter was incorporated into the *Jane Doe* complaint, but, according to Defendant Watkins, Plaintiff has not provided him with the letter.[1]  *Id.* at 3; ECF No. 41-1, at 8. Defendant Watkins contends that because Professor Gilbertson's opinions are based on internet searches, the *Jane Doe* complaint, the DOJ press release and the undisclosed letter, his "opinions are not grounded in reliable, admissible facts as evidenced by the fact that his reports do not include citation to any record evidence." *Id.* (emphasis omitted).

Fed. R. Evid. 702 requires that the opinions of expert witnesses be "based on sufficient facts or data" and be "the product of reliable principles and methods" which have been reliably applied "to the facts of the case." Fed. R. Evid. 703 permits experts to base their opinions "on

---

[1] Plaintiff will be required to disclose any material that Professor Gilbertson relied on while reaching his opinion pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii), which provides that when a party designates an expert witness, the witness must provide a written report containing "the facts or data considered by the witness in forming" their opinions. The Rule 26 Advisory Committee Notes specify that "facts or data" includes "any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26 (2010 Amendment Advisory Committee Notes).

facts or data in the case that the expert has been made aware of or personally observed." Rule 703 additionally allows an expert's opinion to be based on evidence that is not admissible if the evidence is "of a type reasonably relied on by experts in the particular field in forming opinions or inferences on the subject." *Tassi v. Holder*, 660 F.3d 710, 721 (4th Cir. 2011) (citing *id.*).  District courts enjoy "'broad latitude' in determining the reliability and admissibility of expert testimony . . . ." *Hare v. Opryland Hosp., LLC*, No. DKC-09-0599, 2010 WL 3719915, at *8 (D. Md. Sept. 17, 2010) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999)).

The heart of Defendant Watkins' argument is that Professor Gilbertson's testimony lacks a reliable factual basis because his reports were prepared without looking at enough relevant discovery in this case.  While some sources Professor Gilbertson based his opinions on were produced in discovery, *see* ECF Nos. 41-3, at 3, 41-2, at 13, 41-4, at 4 (illustrating Professor Gilbertson's consideration of U.S. Department of Justice ("DOJ") press release, which was produced in discovery, in both reports), most of his information came from publicly available news articles that he found through internet searches.  ECF No. 41-2, at 9–11.  As Defendant Watkins points out, Professor Gilbertson did not review Defendant Dupree's personnel file, any deposition testimony, or any discovery responses while forming his opinions.  ECF No. 41-1, at 8–9.  While Professor Gilbertson's opinions would certainly hold more weight had they considered these materials, the Court is not convinced that Professor Gilbertson's testimony should be struck for this reason.  Generally, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned [to] that opinion rather than its admissibility . . . ." *Bresler v. Wilmington Tr. Co.*, Nos. PJM 09-2957, PJM 12-3295, 2015 WL 1396265, at *3 (D. Md. Mar. 24, 2015), *aff'd* 855 F.3d 178, 202 (4th Cir. 2017) (quoting *Viterbo v. Down Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).  *See also St. Michaels's Media, Inc. v. Mayor & City Council of Balt.*, 566 F. Supp.

11

3d 327, 355 (D. Md. 2021) (quoting *Bresler*, 855 F.3d at 195) ("questions regarding the factual underpinnings of the expert witness's opinion affect the weight and credibility of the witness's assessment, not its admissibility"); *Anderson v. ProFrac Mfg., LLC*, No. 5:20-cv-227, 2022 WL 4238098, at *1 (N.D. W.Va. July 20, 2022) (denying a motion *in limine* to exclude an expert witness whose opinion was "based upon facts and evidence that [were] not in the record" because this issue went to "the weight of the evidence rather than its admissibility"). Undoubtedly, the sources of Professor Gilbertson's opinions will be the subject of "vigorous cross-examination," and the jury will accordingly consider the weight to apply to it. *Moreland*, 437 F.3d at 431 (quoting *Daubert*, 509 U.S. at 596).

Additionally, Defendant Watkins' argument that Professor Gilbertson's testimony should be precluded because it relies on inadmissible facts is inconsistent with Rule 703. The Federal Rules of Evidence relax admissibility requirements for the factual basis of expert testimony, allowing expert opinions based on inadmissible evidence where "experts in the particular field would reasonably rely on th[e] kind of facts or data informing an opinion on the subject." Fed. R. Evid. 703. Assuming, without concluding, that the news articles Professor Gilbertson found on the internet, the DOJ report, the *Jane Doe* complaint, and the letter are inadmissible, Professor Gilbertson may still base his opinion on these items if doing so is reasonable in his field. Other courts have permitted experts in the field of police practices and procedures to rely on different kinds of materials to glean information on the backgrounds of police officers. In *Obrycka v. City of Chi.*, No. 7-c-2372, 2011 WL 2600554, at *8 (N.D. Ill. June 29, 2011), for example, the Court found that it was reasonable for a police misconduct expert to rely on a DOJ report on citizen use of force complaints. Similarly, in *Talley v. City & Cnty. of Denver*, No. 16-cv-2327-JLK, 2020 WL 5517010, at *3–4 (D. Colo. July 13, 2020), the court found that an expert on police practices

and use of force could rely on previous use of force complaints against officers, provided that the complaints were offered only as the rationale behind the expert's opinion, not for their truth. Furthermore, other courts have found that expert witnesses in various fields may rely on news articles as the factual basis for their expert opinions. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 439 (E.D.N.Y. 2013) (finding that experts in the field of terrorism reasonably relied on news reports and other secondary sources); *Freeny v. Murphy Oil Corp.*, No. 2:13-cv-791-RSP, 2015 WL 5144347, at *2 (E.D. Tex. June 4, 2015) (finding news articles fell within Rule 703 for the expert's report in a patent infringement case); *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 520 F. Supp. 3d 872, 892 (E.D. Mich. 2021) (finding an expert in the field of economics and business valuation could reasonably base their opinion on news articles). *But see Bewley v. Turpin*, No. 20-cv-386-TWP-DML, 2022 WL 2317426, at *12 (S.D. Ind. June 27, 2022) (finding it was not reasonable for an expert on police dog training to rely on a news article where the expert "concede[d] in his deposition that he does not typically rely on news articles in forming his opinion").

Here, it was similarly reasonable for Professor Gilbertson to consult public sources detailing the backgrounds of Defendant Dupree and Defendant Watkins. His first report relies on a DOJ press release containing information about Defendant Dupree's misconduct within the Fairmount Heights Police Department; an Opinion from the Appellate Court of Maryland, which noted that the District Heights Police Department, one of Defendant Dupree's prior employers, received "more citizen complaints [against Defendant Dupree] than . . . any other officer in the . . . Department," *Dupree v. City of Dist. Heights Police Dep't.*, No. 693, Sept. Term, 2016, 2017 WL 4251752 (Md. App. Sept. 26, 2017); and news sources addressing Defendant Dupree's termination from other Police Departments and history of citizen complaints. ECF No. 41-2, at 9–

13. Professor Gilbertson's supplemental report additionally relies on the *Jane Doe* complaint and corresponding letter, which lists Defendant Dupree's criticisms of Defendant Watkins' management of the Police Department. ECF No. 41-4, at 3–4. Again, to the extent Defendant Watkins finds these sources unreliable, his objection concerns the expert testimony's weight, not its admissibility.

Finally, Rule 702 "was intended to liberalize the admission of relevant expert evidence." *Westberry*, 178 F.3d at 261. Where the admissibility of an expert's testimony is ambiguous, the Court considers "whether the disputed expert testimony 'has greater potential to mislead than to enlighten.'" *Johnson v. Balt. Police Dep't*, 608 F. Supp. 227, 239 (D. Md. 2022) (quoting *id.*). While Professor Gilbertson's testimony would have benefitted from consulting more discovery, it would not necessarily be misleading to a jury enlightened about the sources of Professor Gilbertson's information. Accordingly, Defendant Watkins' criticisms of Professor Gilbertson's proposed testimony do not render it inadmissible.

### IV. The Timeliness of Professor Gilbertson's Supplemental Report

Finally, Defendant Watkins argues that the Court should strike Professor Gilbertson's testimony based on the supplemental report because the report was untimely. ECF No 41-1, at 9–11. Fed. R. Civ. P. 26(a)(2)(A) requires that parties disclose "the identity of any witness [they] may use at trial to present evidence . . . ." Fed. R. Civ. P. 26(a)(2)(B) requires that parties produce written reports for any retained expert witnesses. Expert witness reports must include, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them [and] the facts or data considered by the witness in forming them . . . ." *Id.* The Federal Rules of Civil Procedure contemplate that an expert may, after the production of such a report, be provided with more information that causes the expert to change the opinions originally

expressed or to express additional opinions. In such cases, Fed. R. Civ. P. 26(e)(1)(A) allows an expert's report to be supplemented "in a timely manner if the party learns that in some material respect the [report] is incomplete or incorrect . . . ." If a party's expert disclosures, expert reports, or supplemental expert reports are not provided in accordance with Rule 26(a) or 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff disclosed Professor Gilbertson's supplemental report to Defendant Watkins on November 15, 2023. ECF No. 41-1, at 1; ECF No. 41-4, at 2. November 15, 2023 was also the Court's deadline for supplemental disclosures. *See* ECF No. 23 (scheduling order setting August 17, 2023 as the deadline for Rule 26(e)(2) supplemental disclosures), ECF No. 29 (extending all deadlines in discovery order by 90 days). Defendant Watkins argues that the supplemental report was not substantially justified or harmless because (1) the documents Professor Gilbertson relied on in his supplemental report already existed at the time he produced his first report, and (2) Defendant Watkins deposed Professor Gilbertson before the disclosure of his supplemental report and accordingly lacked the opportunity to question him on the contents of the supplemental report. ECF No. 41-1, at 10–11.

These arguments are inapplicable where, as here, the supplemental disclosure was timely. *See* Fed. R. Civ. P. 26(e)(2) ("Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."). Each of the cases on which Defendant Watkins relies involved the disclosure of supplemental reports after the relevant deadline. *See* ECF No. 41-1, at 10 (citing *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) ("The EEOC should not be allowed to make a mockery of procedural standards by continually offering new expert reports for this Court's consideration, well past the applicable

15

deadline."); *Campbell v. United States*, 470 Fed. App'x 153, 156–57 (4th Cir. 2012) ("Campbell filed her expert designation, identifying Dr. Moffatt as her proposed expert, on December 7, 2010, five days after the deadline set forth in the district court's scheduling order. . . . Campbell's January 14 supplement did not serve to 'cure' the deficiencies of her original report.")). Nor was the second report a surprise. Professor Gilbertson's initial report explicitly noted that it was a "preliminary report". ECF No. 41-3, at 8. Given this notice, the fact that the deadline for supplemental disclosures had not yet passed at the time of deposition, and the additional month between the supplemental disclosure deadline and the close of discovery, Defendant Watkins could have reasonably waited until after November 15, 2023 to depose Professor Gilbertson. Nonetheless, he chose to proceed with the deposition before the deadline for any supplemental disclosures. Finally, although Defendant Watkins highlights additional materials on which Professor Gilbertson relied in his supplemental report, he does not identify any significant changes or additions in the opinions he intends to offer at trial, further limiting any prejudice. Accordingly, the Court will not preclude Professor Gilbertson from testifying on the matters discussed in his supplemental report on this basis. *See Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 504 (D. Md. 1997) (stating that exclusion of "expert testimony on the basis of inadequate 26(a)(2) disclosures, . . . has traditionally been considered a severe sanction, appropriate only for willful and substantial abuse of the discovery process) (citing *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 586 (W.D.N.Y. 1995) (noting that "[p]recluding testimony from an expert under [Rule 37(c)(1)] is a drastic remedy and should only be applied in cases where the party's conduct represents flagrant bad faith and callous disregard of the federal rules"); *Reed v. Binder*, 165 F.R.D. 424, 431 (D.N.J. 1996) (finding that barring expert's testimony as sanction for inadequate Rule 26(a)(2)(B) disclosure was unduly harsh where expert testimony will dominate the proceedings); *Itar–Tass Russian News Agency v.*

*Russian Kurier, Inc.*, No. 95 CIV. 2144, 1996 WL 337289, at *2 (S.D.N.Y. June 18, 1996) (same)). Nonetheless, to eliminate any remaining prejudice, Defendant Watkins shall be granted leave to depose Professor Gilbertson a second time.

## CONCLUSION

For the foregoing reasons, Defendant Watkins' Motion to Strike Professor Gilbertson's Expert Reports and Preclude His Testimony is GRANTED, in part, and DENIED, in part. Professor Gilbertson is precluded from testifying to the extent discussed above. Defendant Watkins may depose Professor Gilbertson a second time if he so chooses.

Date: February 21, 2023                                             /s/
                                                                                    Ajmel A. Quereshi
                                                                                    U.S. Magistrate Judge